IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| SARAH BEACOM,<br>            PLAINTIFF,<br><br>VS.<br><br>JO ANNE B. BARNHART,<br>COMMISSIONER OF SOCIAL SECURITY,<br>            DEFENDANT. | §<br>§<br>§<br>§ CIVIL ACTION NO. 4:04-CV-0454-Y<br>§<br>§<br>§<br>§ |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE
## AND
## NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

A.   STATEMENT OF THE CASE

Plaintiff Sarah Beacom brings this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claim for disability benefits under Title II and supplemental security income or SSI benefits under Title XVI of the Social Security Act. Beacom applied for SSI benefits on October 14, 1999 and disability insurance benefits on November 23, 1999, alleging she has been disabled since December 21, 1997 due to the residual effects of a brain tumor. She met the requirements for disability insured status through the date of the administrative decision. (Tr. 17).

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 1**

After the Social Security Administration denied her applications for benefits initially and on reconsideration, Beacom requested a hearing before an administrative law judge (the "ALJ"). ALJ William Helsper held a hearing on July 11, 2001 in Fort Worth, Texas. (Tr. 476-98). Beacom was represented by counsel. On August 6, 2001, the ALJ issued an unfavorable decision, finding that Beacom was not disabled or entitled to disability and SSI benefits.[1] (Tr. 16-24). The Appeals Council denied Beacom's request for review of her case, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 6).

B.   STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. An impairment or combination of impairments is severe if it has more than minimal effect on the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d

---

[1] The ALJ declined to reopen two 1998 applications for benefits that had been denied at the initial level in January 1999 and not pursued. That decision is not subject to judicial review. *See Califano v Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 2**

378, 392 (5th Cir. 2000). At the third step, disability will be found if claimant's impairment or combination of impairments meets or equals an impairment listed in the appendix to the regulations. *Id.* §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley,* 197 F.3d at 198. If the Commissioner meets this burden, the claimant must then prove that he cannot in fact perform the work suggested. *Waters v. Barnhart,* 276 F.3d 716, 718 (5th Cir. 2002). A finding at any point in the five-step process that a claimant is disabled or not disabled is conclusive and terminates the analysis. *Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir. 2002).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen,* 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001). It is

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 3**

more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir.2000); *Hollis*, 837 F.2d at 1383.

C.  ISSUES

    1.  Whether the ALJ gave appropriate consideration to the opinions offered by non-examining state agency medial consultants.

    2.  Whether the ALJ's determination that Beacom can perform her past relevant work is supported by substantial evidence.

D.  ADMINISTRATIVE RECORD

    1.  Treatment History[2]

Beacom was diagnosed with a cerebral mass in September 1998 and underwent surgery to remove the mass. (Tr. 159-84). Her recovery went well, and subsequent diagnostic studies showed no recurrence of the tumor. (Tr. 285-86, 289-92, 413-15). Beacom was discharged from her physical therapy program in November 1999 after achieving functional strength and range of motion in all extremities. (Tr. 295).

Beacom underwent a consultative psychological evaluation with Steven Greer, Ph.D., in February 2000 for complaints of aphasia and other cognitive deficiencies. (Tr. 316). Beacom stated that she lived with her parents, who helped care for her sixteen-month-old daughter. She described

---

[2] Beacom does not take issue with the ALJ's general assessment of her physical abilities. She focuses on her functional mental impairments, especially her impairment in the area of sustained attention and concentration.

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 4**

academic problems that in hindsight she thought were attributable to her slow-growing brain tumor. (Tr. 317).

Beacom was cooperative during the evaluation. Greer noted that Beacom cried during some of the testing, apparently due to her dissatisfaction with her current situation, but without evidence of any major neuropsychiatric disturbance.[3] (Tr. 318). Beacom was able to participate in conversations with only occasional and modest word-finding difficulties, and no significant residual aphasic symptoms were observed. (Tr. 318). Beacom reported right-sided numbness and related symptoms suggesting modest residual right hemiparesis[4] attributable to either the location of the tumor or the corrective surgery.

Beacom was able to provide a complex social history with no clear evidence of episodic or semantic memory; however, she demonstrated definite difficulties with her working memory. Testing suggested significant disruption in general attention capacity. (Tr. 319). Beacom demonstrated insight into her circumstances and reasonable intelligence. (Tr. 319). Beacom reported sleeping for long periods and napping with her daughter. She was taking anti-seizure medication, which Greer opined could be a contributing factor to her somnolence. Greer found that Beacom's concentration, pace and persistence were all diminished, and Beacom complained of time management problems. (Tr. 319-20). Greer diagnosed a cognitive disorder, not otherwise specified,

---

[3] Beacom had received treatment in early 1998 for depression and a history of bipolar episodes, but Beacom stopped treatment after learning she was pregnant. She cited the expense, but also told her treating psychologist that she was feeling more focused and directed in her life. (Tr. 305-06).

[4] Hemiparesis refers to muscular weakness or a partial paralysis of the lower half of one side of the body. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 800 (29th ed. 2000).

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 5**

but opined that Beacom had largely recovered from the treatment of her tumor and was ready for vocational rehabilitation. (Tr. 324).

The state agency psychologist who initially reviewed Beacom's application diagnosed a cognitive disorder that caused slight impairment in Beacom's daily activities; caused no impairment in social functioning; often resulted in deficiencies of concentration, persistence, or pace; and had resulted in one or two episodes of deterioration in work or work-like settings. (Tr. 331-338). The psychologist further opined that Beacom had no impairment in her ability to understand, remember and carry out even complex instructions. However, Beacom was considered moderately limited in her ability to maintain attention and concentration for extend periods and her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. (Tr. 340). Beacom was also considered moderately limited in her ability to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 341). The psychologist concluded that Beacom was capable of understanding, remembering and carrying out complex instructions, interacting with others, and responding to change. (Tr. 342). On reconsideration, another state agency physician reviewed Beacom's cognitive disorder and opined that Beacom retained the ability to understand and follow simple instructions, interact adequately with coworkers and supervisors, and adapt to routine work changes. (Tr. 371).

Beacom completed three days of vocational testing with Goodwill Industries in April and May 2000. (Tr. 424). Beacom was evaluated as having a pleasant, cooperative work temperament and average to above-average academic strengths, (Tr. 432), but limitations included significant fatigue and poor handwriting. (Tr .433). Beacom demonstrated average to above average memory

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 6**

on formal testing, but exhibited subtle forgetfulness with more informal memory assessments. (Tr. 427-28). Beacom was not punctual for her appointments. The evaluator opined that Beacom would benefit from a light duty job that allowed her to alternate between sitting and standing, and it would be helpful if work assignments were presented to her in writing. (Tr. 433).

Beginning in early 2001, Beacom sought treatment from psychiatrist S. Saleem, M.D., for her cognitive limitations. Beacom complained of difficulty completing tasks and managing her time, and reported mild memory problems. (Tr. 419). She was living with her parents, but had a boyfriend for the past six months and felt good about that relationship. Saleem recommended a mood stabilizer, which Beacom refused, and neuropsychiatric testing. (Tr. 420, 421).

Saleem prescribed BuSpar after Beacom complained of anxiety. (Tr. 421). During an office visit on February 27, 2001, Beacom reported feeling better and had recently earned an "A" in a computer class she was taking at the community college. Beacom had also recently learned that she was pregnant with her second child and feared telling her parents, but she reported overall improvement in her concentration and mood. (Tr. 421-22). Beacom was upset when she saw Saleem again in March 2001. Her boyfriend faced possible incarceration for failing to pay child support, and Beacom had still not told her parents that she was pregnant. Beacom was finding it difficult to focus on her school work. (Tr. 422-23).

Saleem prepared a written evaluation of Beacom's mental condition in April 2001. Saleem noted that Beacom's diagnoses included cognitive disorder and bipolar disorder that caused difficulty in task completion, attention problems, impaired concentration, impaired memory, and a variable mood. (Tr .416). Beacom was not considered to have any restriction in her activities of

daily living, but was assessed with marked difficulty in social functioning. (Tr. 416). Saleem assessed moderate restriction in Beacom's ability to understand, remember, and carry out simple instructions, with marked restriction in her ability to respond appropriately to supervisors or coworkers, deal with changes in work setting, and handle work stresses. Saleem also opined that Beacom demonstrated marked deficiencies in concentration, persistence or pace. (Tr. 417). Saleem considered Beacom to be incapable of performing a full eight-hour work day on a continuing basis.

Beacom's primary care physician, Huy Nguyen, M.D., completed a medical evaluation interrogatory on April 9, 2001. Nguyen indicated that Beacom could sit no more than two hours per eight-hour work day and stand or walk for no more than one hour per work day. (Tr. 389). Beacom was considered capable of lifting up to thirty pounds occasionally, but Nguyen also found that Beacom experienced significant fatigue of unknown etiology. Nguyen opined that Beacom's symptoms interfered with her ability to perform daily activities, deal with work stress, think or concentrate, and impaired the persistence and pace of her work and her ability to perform full-time work on a sustained basis. (Tr .390). Nguyen opined that Beacom must rest frequently, i.e., more than one-third of the day, and could be expected to miss work on a frequent basis due to fatigue. (Tr. 390-91).

    2.    Administrative Hearing

Beacom was twenty-nine years old on the date of her administrative hearing. (Tr. 479). She testified that she had forty-nine college credit hours, but was not currently attending school. She last worked in July 1998 as a supermarket cashier, but stopped working because she frequently felt

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 8**

dizzy and faint. (Tr. 480).

Beacom testified that she and her child lived with her parents. Beacom testified that she was unable to do many household chores, but she was able to drive. She described her sleep as restless. (Tr. 481). Beacom testified that she had difficulty with her short-term memory. She explained that sometimes her memory was perfect, but other times, her memory would "slip away" and return later. (Tr. 482). She testified that she was easily distracted when trying to tend to household chores. She went grocery shopping for her family, but it took her a long time to complete the shopping. (Tr. 483-84). Beacom testified that she enjoyed reading, but tended to feel sleepy when she read. She testified that she had difficulty taking notes in school because she had trouble writing the letters. (Tr. 485).

Beacom typically arose at 8:30 a.m. and prepared breakfast for herself and her daughter. She would take a one to three hour nap with her daughter in the afternoon. (Tr. 486). Beacom took her medication, BuSpar, twice a day, but testified that many things continued to stress her. Examples included the administrative hearing, appointments that required her to be on time, and the need to get a certain number of tasks done within a given period of time. (Tr. 487).

Beacom's mother testified that her daughter moved home in April 1997 because she was ill, but the cause was unknown at that time. Beacom attempted to return to work after learning she was pregnant, but was underweight and exhausted and demonstrated other symptoms that did not fit with a normal pregnancy. (Tr. 489-91). The family finally learned that Beacom had a slow-growing brain tumor that could have been present since birth.

Beacom testified that, despite surgery, she continued to have pain and muscle spasms on her

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 9**

right side. Her right side also felt weaker to her, and she had limited endurance with tasks involving her right arm or leg. (Tr. 492).

Vocational expert William Weber testified that Beacom had held a variety of jobs that were generally light and unskilled or semiskilled in classification. Beacom's employment history include work as a caterer's helper, waitress and bartender, service desk cashier, concessions person, and kitchen helper. (Tr. 496-97). Weber testified that an individual who was unable to stay on task for a vocationally relevant period of time would be unable to engage in competitive employment. (Tr. 497).

Weber also testified that most of Beacom's previous jobs required the worker to stand, but many of the cashier jobs would allow a person to sit sometimes. Work as a cashier required public contact and attention to detail, i.e., making correct change. (Tr. 497-98). In response to questions from Beacom's counsel, Weber testified that a moderate concentration problem would interfere with cashiering jobs. (Tr. 498).

3.  ALJ Decision

The ALJ found that Beacom had not engaged in substantial gainful activity since her alleged onset date and further found that Beacom's cognitive disorder and bipolar disorder were severe impairments under the standard set forth in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985). (Tr. 19). The ALJ found mild restrictions in Beacom's daily activities and social functioning, and noted that Beacom had a history of moderate difficulty with concentration, persistence or pace that had improved with cognitive therapy and medications. (Tr. 19, 23). However, the ALJ did not find that Beacom had any impairment or combination of impairments that met or equaled the severity of a

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 10**

listed impairment. (Tr. 20).

After reviewing Beacom's allegations and the record, the ALJ concluded that Beacom retained the residual functional capacity for light, simple work. (Tr .22). Based on the vocational expert's testimony, the ALJ found that Beacom's past relevant work as a ticket seller was a light and unskilled job that would not exceed Beacom's residual functional capacity. (Tr. 23). Accordingly, the ALJ determined that Beacom was not disabled at Step Four of the sequential evaluation process. (Tr. 23-24).

D.   DISCUSSION

   1.   State Agency Medical Consultants

Beacom asserts that the assessment of her residual functional capacity is unsupported by substantial evidence because the ALJ did not adequately consider the opinions of the state agency medical consultants.

Findings of fact made by state agency medical and psychological consultants regarding the nature and severity of an individual's impairments are treated as expert opinion evidence from non-examining sources at the administrative hearing and Appeals Council levels of administrative review. 20 C.F.R. §§404.1527(f), 416.927(f); SOCIAL SECURITY RULING 96-6p. The administrative law judge and the Appeals Council are not bound by the state agency physicians' opinions, but may not ignore them and must explain the weight given to these opinions in their decisions. SOCIAL SECURITY RULING 96-6p.

Social Security Rulings are published under authority of the Commissioner and are binding on the Administration.   *Hall v. Schweiker*, 660 F.2d 116, 119 n.4 (5th Cir. [Unit A] 1981)(per

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 11**

curiam). An agency must follow its own procedures, even if those procedures are more rigorous than what would otherwise be required. *Hall*, 660 F.2d at 119, *cited in Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000). Should the agency violate its internal rules and prejudice result, the proceedings are tainted and any action taken cannot stand. *Hall*, 660 F.2d at 119.

The ALJ did not ignore the opinions offered by the state agency medical consultants. He specifically referred to those assessments, but he decided that additional later evidence indicated that Beacom was more limited than originally thought–although still not disabled.[5] (Tr. 23). Moreover, Beacom demonstrates no prejudice that might be attributed to the ALJ's consideration of the state agency assessments. Beacom asserts that the ALJ actually and inexplicably found her less limited because the state agency medical consultants had identified a moderate impairment in her ability to maintain attention and concentration. However, the state agency medical consultants also found that Beacom was capable of simple work, which supports the ALJ's assessment of Beacom's residual functional capacity.

The ALJ gave adequate consideration to the opinions offered by the state agency medical consultants.

2.   Vocational Evidence and Past Relevant Work

Beacom contends that the determination that she can return to her previous work as a ticket

---

[5] Beacom finds this statement perplexing because the ALJ never specifies in what areas he found her more restricted. But a comparison of the ALJ's ultimate RFC assessment with a similar assessment by the state agency psychologist who reviewed Beacom's applications initially reflects that the ALJ did not agree with the psychologist's determination that Beacom could perform even complex tasks. On the other hand, the ALJ's RFC determination appears quite similar to the opinions of the state agency physician who reviewed Beacom's case on reconsideration.

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 12**

seller is not based upon substantial evidence in light of the vocational expert's testimony that a moderate concentration problem would interfere with a person's ability to work as a cashier.

A claimant is not considered disabled when he retains the RFC to perform the actual functional demands and job duties for a particular past job or the functional demands and job duties of that occupation as generally performed in the national economy. SOCIAL SECURITY RULING 82-61. The claimant is the primary source of vocational documentation, and the claimant's statements are generally sufficient to determine skill level, exertional demands, and nonexertional demands of a previous job. SOCIAL SECURITY RULING 82-62. For situations where available documentation and vocational resource materials are insufficient to determine how a particular job is usually performed, it may be necessary to obtain the services of a vocational expert. SOCIAL SECURITY RULING 82-61. The ALJ must develop enough information about past work to permit a decision about a claimant's ability to return to that work, and must provide a rationale explaining how a decision was reached. SOCIAL SECURITY RULING 82-62.

Beacom contends that the ALJ erred in failing to make specific findings about the physical and mental demands of her previous job in accordance with Social Security Ruling 82-62. She asserts that the ALJ reached an unsupported decision because work designated as a ticket seller suggests that cashier-type duties were involved, but the vocational expert testified that a moderate concentration deficit would impair a person's ability to function as a cashier.

The ALJ indicated that he was relying on the vocational expert testimony to support a determination that Beacom was capable of working as a ticket seller. The ticket seller job is apparently a reference to Beacom's work at a movie theater, which Beacom described in her written

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 13**

vocational report as "concessionist, cashier, sold tickets." (Tr. 130). No further details about her job with the movie theater were elicited by the ALJ. The vocation expert did not refer to Beacom's work as a "ticket seller," but did testify that the job of concessions person at a movie theater is unskilled work requiring light exertion.[6] (Tr. 496).

The ALJ's failure to develop the record with respect to the physical and mental requirements of the job of ticket seller precludes effective judicial review and requires a remand of Beacom's disability claim. In his decision, the ALJ acknowledged that Beacom had a history of moderate difficulty in the areas of concentration, persistence and pace, which improved with the therapy and medication that Saleem had provided, (Tr. 19, 22-23), yet he asked the vocational expert no follow-up questions about the impact of a moderate concentration deficit on a person's ability to perform the duties of a cashier. The court is unable to determine whether the ALJ considered the job of ticket seller compatible with Beacom's residual functional capacity even during periods when she had a more significant impairment in her concentration, persistence, and pace.

---

[6] The *Dictionary of Occupational Titles* (DOT) includes a listing for "Ticket Seller," which is designated as an unskilled, light position with the following duties:

> Sells tickets for travel on ferryboats, street railroads, buses, and for admission to places of entertainment, such as skating rinks, baseball parks, stadiums, and amusement parks: Depresses key on ticket-dispensing machine that automatically ejects number of tickets requested by patron or tears tickets from roll and hands ticket to patron. Accepts payment and makes change. Answers questions concerning fares, routes, schedules, and reservations, and gives information concerning coming attractions. Keeps daily balance sheet of cash received and tickets sold. May fill reservations for seats by telephone or mail. May sell tickets from box office and be designated Cashier, Box Office (amuse. & rec.). May collect fares from repeat riders at amusement park and be designated Second-Ride-Fare Collector (amuse. & rec.). May collect fares from railroad passengers at station and sell commuter tickets and be designated Station Agent (r.r. trans.) II.

*See* Dictionary of Occupational Titles § 211.467-030 (rev. 4th ed. 1991). Neither the ALJ nor the vocational expert indicated what DOT listing, if any, was most similar to Beacom's work at the movie theater.

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 14**

In addition, the vocational expert testified that the cashier jobs he had identified during the hearing would be affected by a moderate problem with concentration, but it is unclear if the vocational expert intended to include the concessions worker in that group or only the jobs he had expressly labeled as cashier positions.

On remand, the Commissioner should clarify whether work as a concessions person is the same as a ticket seller and adduce additional vocational testimony regarding the specific job duties of a ticket seller so that those duties can be compared with Beacom's residual functional capacity.

## RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and remanded for additional development of the vocational record.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document. The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until August 29, 2005. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 15**

factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until August 29, 2005 to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED AUGUST 8, 2005.

     /s/ Charles Bleil
     CHARLES BLEIL
     UNITED STATES MAGISTRATE JUDGE